## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN NODINE, CHERYL MORR, and, | ) | |
| DAVID MEDLOCK, | ) | |
| On Behalf of Themselves and | ) | |
| All Others Similarly Situated, | ) | |
| Plaintiffs, | ) | Case No. CIV-17-163-SMY |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| PLAINS ALL AMERICAN PIPELINE, L.P., and | ) | |
| PLAINS PIPELINE, L.P., | ) | |
| Defendants. | ) | |

### DEFENDANTS' COMBINED MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND BRIEF IN SUPPORT

Defendants Plains All American Pipeline, L.P., and Plains Pipeline, L.P. (collectively, "Defendants") respectfully submit this motion to dismiss Plaintiffs' Class Action Complaint (Doc. 1, hereafter "Complaint") in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and brief in support. Defendants would show the Court as follows:

### I.    MOTION TO DISMISS

This is a putative class action brought by three individual "residents" of Highland, Illinois based on alleged injuries arising from the accidental release of approximately 100 barrels of crude oil from the Pocahontas Station on the MP 29 pipeline on July 10, 2015.[1] Defendants own and operate the MP 29 pipeline. Plaintiffs allege economic losses to property values as a result of the spill. Importantly, however, Plaintiffs' Complaint does not identify a physical injury to a property where Plaintiffs have an ownership or possessory interest. Indeed, the Complaint is

---

[1] This is the second time that this case has been filed.  The initial complaint filed by two of the individual plaintiffs in this case was voluntarily dismissed on November 2, 2015. *See Kevin Nodine and David Medlock v. Plains All American Pipeline, L.P., et al.* 15-cv-758-NJR-PMF, in the United States District Court for the Southern District of Illinois (Docket Entry Nos. 31 and 32). Large sections of the current complaint duplicate prior allegations in the original lawsuit.

devoid of any factual description as to (1) any property owned or leased by any of the three Plaintiffs, and (2) any specific physical injury to Plaintiff-owned property whether by environmental contamination, oiling or some other mechanism.

Under Illinois law, a plaintiff is barred from recovering in tort purely economic losses absent proof of attendant actual physical damage. Because Plaintiffs have not pled specific property impacted by such an actual physical injury caused by contaminants from the oil spill, Plaintiffs' tort claims (trespass, negligence, negligence per se, public nuisance, and private nuisance) should be dismissed under Rule 12(b)(6).

Plaintiffs also assert claims under the federal Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701, *et seq*. The OPA claims should be dismissed for two independent reasons. First, Plaintiffs have not satisfied the pre-litigation "presentment" (or notice) standards under 33 U.S.C. § 2713. Plaintiffs' pre-suit letter to Defendants fails to provide (i) the nature and extent of the individual Plaintiffs' damages, (ii) the amount of money damages claimed by these individuals, and (iii) information sufficient to assess whether these alleged losses satisfy OPA's causation requirements. The lack of a proper pre-suit presentment notice requires dismissal of Plaintiffs' OPA claims. Second, Plaintiffs seek recovery for economic losses under the OPA Section 2702(b)(2), which permits recovery for economic losses "due to the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E). But, Plaintiffs allege that their damages stem from "stigma" and the perception of risk held by "potential buyers" – not from actual damage to any property. Doc. 1 at ¶ 49. OPA was not designed to cover such attenuated economic loss claims, and Plaintiffs' claims under OPA accordingly should be dismissed for this additional reason.

Finally, Plaintiffs' Complaint simply does not plead sufficient facts to meet the pleading standards set out by the Supreme Court in *Twombly* and *Iqbal*.[2] Key elements of all of Plaintiffs' claims are addressed, if at all, with conclusory allegations devoid of case-specific facts. The location, nature, and extent of Plaintiffs' alleged actual legal injuries and damages are a mystery. Plaintiffs' class allegations are little more than a regurgitation of the rule requirements. Plaintiffs include a claim for "treble damages," "exemplary or punitive damages" and "fraud" in their Prayer (Doc. 1 at p. 23), but provide no factual allegations that would support punitive damage claims under the Illinois law. Importantly, OPA does not provide for punitive or exemplary damages.[3] Plaintiffs' Complaint fails the minimum standards of FRCP 8(a)(2), and does not provide Defendants adequate notice of the claims against them.

For the reasons set forth in the following brief in support, Defendants move for an order dismissing Plaintiffs' Complaint in its entirety.

## II.    BRIEF IN SUPPORT

### A.    Legal Standard

In a district court's consideration of a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the amended complaint and draw all permissible inferences in [the plaintiff]'s favor." *Bible v. United Student Aid Funds, Inc*., 799 F.3d 633, 639 (7th Cir. 2015). A complaint will survive a 12(b)(6) motion if, after the court disregards any portions that are "no more than conclusions," it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).
[3] *See S. Port Marine, LLC v. Gulf Oil Ltd. P'Ship*, 234 F.3d 58, 65-66 (1st Cir. 2000).

inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

The Seventh Circuit has repeatedly affirmed the dismissal of a complaint where Plaintiff fails to allege case-specific facts that address each element of the cause of action at issue. *See e.g.*, *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 279-80 (7th Cir. 2016) (plaintiff's "complaint fails to identify any pecuniary harm resulting from [defendant's] comment," an essential element to a claim for tortious interference); *West Bend Mutual Ins. Co. v. Schumacher*, 844 F.3d 670, 672 (7th Cir. 2016) ("the complaint fails to state plausibly the causation and harm elements required under Illinois legal malpractice law").

For a Rule 12(b)(1) motion to dismiss, a district court accepts as true the well-pleaded allegations from the complaint and draws all reasonable inferences in plaintiff's favor. *Franzioni v. Harmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). When considering a motion to dismiss under Rule 12(b)(1), the district court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co., v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quotation and citation omitted).

**B.      Plaintiffs Have Not Pleaded an Actual Injury to Property Sufficient to Support their Tort Claims.**

Plaintiffs have not properly pled claims for property damage under tort because Illinois law holds that purely economic losses are not recoverable in tort unless those economic damages are accompanied by an actual physical injury to the real property. Plaintiffs' Complaint does not identify either an interest in real property or an actual physical injury sufficient to meet this legal requirement.

### 1.    The Illinois Economic Loss Rule bars the recovery in tort of purely economic loss absent actual damage to the property.

In 1982, the Illinois Supreme Court adopted the economic loss rule, effectively limiting damages that are recoverable in tort. *See Moorman Mfg. Co. v. Nat'l Tank Co*., 91 Ill. 2d 69 (1982). In *Moorman*, the plaintiff brought a products liability claim against the manufacturer of an allegedly defective grain-storage tank that developed cracks in the side; the plaintiff sought damages for the cost of repairs and reinforcement of the tank as well as loss of use of the tank. *Id*. at 73-74. The *Moorman* court held that these alleged damages were "economic losses" that are not recoverable in tort. *Id.* at 91.

The *Moorman* decision recognized three exceptions to the rule:

> This court in *Moorman* articulated three exceptions to the economic loss rule: (1) where the plaintiff sustained damage, *i.e.*, *personal injury or property damage*, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.

*In re Chicago Flood Litig*., 176 Ill.2d 179, 199 (1997) (emphasis added; internal references to *Moorman* deleted). Only the first exception merits discussion here, but even it does not apply to rescue Plaintiffs' tort claims. That is because, even in the case of a "sudden and dangerous occurrence" or a "calamitous event," the economic loss rule will still apply to bar a tort recovery unless there is accompanying physical damage to plaintiffs' property or a personal injury, which is caused by the calamitous event. *See Board of Education of City of Chicago v. A, C and S, Inc.*, 131 Ill. 2d 428, 442-3 (1989)("reinforce[ing] the necessity of physical damage to other property or personal injury, not merely a risk of injury or damage"); *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr. and Co.*, 349 Ill.App.3d 178, 193, 810 N.E.2d 235, 248 (2nd Dist., 2004).

Shortly after *Moorman*, applying Illinois law in a diversity action, the Seventh Circuit

extended application of the economic loss rule to "contractual strangers" (*i.e.*, situations where there is not a potential contractual or warranty relationship). *See Dundee Cement Co. v. Chemical Labs., Inc.*, 712 F.2d 1166 (7th Cir. 1983). In *Dundee Cement*, the owner of a cement terminal sued the owner of a tanker truck after the truck overturned on a road and forced the cement company to temporarily close due to the accident (because the road on which the accident occurred was the sole access road for the cement terminal). *Id.* at 1167. The Seventh Circuit considered "whether Illinois tort law permits a plaintiff whose property was not physically damaged to recover for purely economic losses allegedly caused by the negligence of a defendant." *Id.* Citing *Moorman*, the Seventh Circuit concluded that the plaintiff could not recover absent physical damage to its property. *Id.* at 1170. The court rejected the plaintiff's argument that the unreasonably dangerous nature of transporting volatile chemicals provided an exception to the economic loss rule. *Id.*

Courts have applied the economic loss rule to bar the recovery of purely economic damages for a range of different torts, including the causes of action alleged in Plaintiffs' Complaint.[4] Courts have also applied this rule to cases arising from claimed environmental contamination (like this case), flooding and other alleged impacts to land. For example, the Illinois Supreme Court held in a flood damage case: "[f]or damages to be recoverable in tort, the sudden, dangerous, or calamitous occurrence must still result in personal injury or property damage. Absent injury to a plaintiff's person or property, a claim presents an economic loss not recoverable in tort." *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 201 (1997). Similarly, alleged loss in property value associated with "excessive amounts of coliform" detected on at least three occasions in the drinking water supply was also judged to be purely economic loss and not

---

[4] *Dundee Cement*, 712 F.2d at 1169-71 (negligence); *In re Starlink Corn Prod. Liab. Litig.*, 212 F.Supp.2d 828 (N.D. Ill. 2002)(negligence, conversion or trespass to chattels, private nuisance, and public nuisance).

recoverable in tort. *Donovan v. County of Lake*, 2011 IL App (2d) 100390, at ¶¶  20, 56, 951 N.E. 2d 1256, 1260, 1266.

In a case that closely resembles this one, the Illinois appellate court (1st District) addressed alleged injuries arising from vinyl chloride contamination that temporarily flowed through plaintiffs' plumbing systems. *Allen v. YRC Worldwide, Inc.*, 2015 IL App (1st) 143053-U, 2015 WL 5084729.[5] "Plaintiffs argue[d] that the contamination of the water flowing through plaintiffs' homes constituted property damage that is recoverable under the *Moorman* doctrine, as it resulted in lower property values." *Id.* at ¶ 26.  The court recognized that "[p]laintiffs do not allege there is a need to remove the chemical from their property and or that the chemical had any lasting effects on plaintiffs' properties." *Id.* at ¶ 27.  The court explained: "[c]onclusory allegations of unspecified property damage are insufficient to withstand a motion to dismiss. . . [and] any possible reduction in plaintiffs' property values because of the stigma attached to the previous water contamination is purely economic in nature." *Id.* at ¶ 30. The court held:

> . . . [P]laintiffs here do not allege that the vinyl chloride is still on their property and needs to be removed.  Plaintiffs assert that simply because the vinyl chloride passed through their property, their property was damaged.  They do not allege how this affected their property in any way, other than economic damage from an expected reduction in profits if they were to sell their property. This is insufficient under *Moorman*.

*Id.* at ¶ 32.

As described below, the same deficiencies exist in Plaintiffs' Complaint here. Plaintiffs do not allege oil from the release is "still on their property." They do not allege oil "needs to be removed" from their property. Finally, they do not state how any alleged contamination from the pipeline release "affected their property in any way" other than general statements that stigma

---

[5] Although Illinois Supreme Court Rule 23(e) provides that an unpublished decision of the appellate court is not precedential and may not be cited except for certain limited purposes, Illinois Supreme Court Rules do not govern this Court.  The *Allen* case is cited as persuasive authority here consistent with FRAP 32.1(a).

has adversely impacted its value.

### 2.      Plaintiffs' have not pled actual damage to their property.

Plaintiffs' Complaint does not identify any real or personal property owned or leased by Plaintiffs that was damaged by the pipeline release. Plaintiffs' Complaint does not specifically identify any property where oil contamination still remains following the incident response and cleanup by Defendants. Plaintiffs' Complaint does not specifically identify any property that requires any remediation or cleanup under any scientific or regulatory standard. The only specifically identified alleged damages are for loss in value based on "stigma." *See* Doc. 1 at ¶¶ 48-50.

The most complete description of Plaintiffs' alleged property damages appears in paragraphs 48-50 of their Complaint, which are reproduced below:

> 48. In regards to land use, the oil spill has created and will create uncertainty and stigma as to the safety of occupying properties affected by the oil spill.

> 49. In regards to property values, the oil spill has reduced and will reduce the market value of properties. Market value is largely based on the attitudes of typical buyers and sellers in a real estate market. The potential buyers in a real estate market perceive risk, and it will negatively impact market value regardless of how real or imagined that risk is. The property owners will have to disclose that their properties were affected by the oil spill.

> 50. In Highland, there are an estimated 380 residential parcels and 120 agricultural parcels in the impacted area, which are subject to market resistance resulting in diminished property values. The appraisal industry found that residential properties in or near an area affected by an oil spill experienced a reduction in property values in excess of 10%.

Doc. 1 at ¶¶ 48-50. These are purely economic damages. There is no allegation of a specific actual injury to specifically identified plaintiff-owned property.

There are conclusory allegations that "Defendants discharged a polluting matter on Plaintiffs' . . . real property" under Plaintiffs' trespass allegations. Doc. 1 at ¶78. But, even these conclusory allegations fail to identify: (1) the specific property impacted, (2) the nature of the

damage, (3) whether the "polluting matter" is still present on the property, and (4) the nature of the required remedy. These are the exact same deficiencies that led the courts in *In re Chicago Flood Litig.*, *Donovan v. County of Lake*, and *Allen v. YRC Worldwide* to dismiss plaintiffs' economic loss claims. After *Twombly* and *Iqbal,* moreover, the Seventh Circuit has reinforced the federal requirement that Plaintiffs must plead non-conclusory facts supporting each of their claims. *See e.g., Pierce v. Zoetis, Inc.*, 818 F.3d 274, 279-80 (7th Cir. 2016)(affirming the district court's dismissal based on "mere conclusory statements" of alleged legal injury). Plaintiffs' tort claims should be dismissed because they do not identify any physical damage, and economic loss is not recoverable under the *Moorman* doctrine in the absence of such physical damage.

### C.  Plaintiffs Failed to Satisfy the Mandatory Presentment Clause of OPA

Plaintiffs allege that Defendants violated OPA. Doc. 1 at ¶¶64-76. Because Plaintiffs have not satisfied OPA's compulsory claims presentation requirement, Plaintiffs' OPA claims are defectively pleaded, and should be dismissed pursuant to Rule 12(b)(1) and/or 12(b)(6).[6]

Under 33 U.S.C. § 2713, presentment of a claim to an alleged responsible party is a mandatory condition precedent to filing a lawsuit that seeks relief under OPA. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (holding that presentment is a mandatory prerequisite to filing suit under OPA); *In re Oil Spill*, 808 F. Supp. 2d 943, 964 (E.D. La. 2011)(stating (1) that claimants who have not complied with the presentment requirement are subject to dismissal without prejudice, and (2) that dismissed plaintiffs must exhaust the presentment process before returning to court). This presentment precondition reflects

---

[6] Some federal courts have dismissed OPA claims under  Rule 12(b)(1) when a plaintiff has not satisfied the claims presentation requirements of 33 U.S.C. § 2713. *See, e.g., Boca Ciega Hotel*, 51 F.3d at 240 (holding that court lacks subject matter jurisdiction absent plaintiff's compliance with OPA presentation requirements); *but see, Marathon Pipe Line Co. v LaRoche*, 944 F. Supp 476 (E.D. La. 1996)(addressing presentment as more akin to exhaustion of administrative remedies). Other courts have addressed presentment under Rule 12(b)(6). *See Turner v. Murphy Oil USA, Inc.*, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007).

Congress's intent to specify a particular means for recovery of costs and damages resulting from an oil spill, *See Boca Ciega Hotel, Inc.*, 51 F.3d at 240.

To present a claim, a claimant must specify the amount of damages being sought—referred to in the statute as a "sum certain"—and provide evidence and information sufficient for the party receiving the claim to assess whether the alleged loss satisfies OPA causation requirements and whether the claimant incurred the amount of damages alleged. *See* 33 U.S.C. § 2701(3); *Nguyen v. American Commercial Lines L.L.C.*, 805 F.3d 134, 139-40 (5th Cir. 2015)(adequate presentment consisted of actual receipts and in some cases tax returns supporting losses); *Johnson v. Colonial Pipeline Co.*, 830 F.Supp. 309, 311 (E.D. Va. 1993). Conclusory statements lacking a description of the nature and extent of alleged damages and the basis for claiming such damages are not sufficient to meet the presentment requirement. *Id.*

Here, Plaintiffs' allege that they satisfied the OPA presentment requirement on grounds that Defendants did not settle a "claim" made the subject of an October 18, 2016 demand letter from Plaintiffs "within 90 days after the date upon which the claim was presented." *See* Doc. 1 at ¶76. A copy of Plaintiffs' October 18, 2006 demand letter is attached as Exhibit A. Importantly, the demand letter lacks the specificity necessary to satisfy presentment as it contains no "sum certain" of damages, no description of damages Plaintiffs are personally claiming, and no basis to suggest that members of a putative class have satisfied presentment. Instead, Plaintiffs' letter merely estimates "socioeconomic and the environmental damages" and diminished property values in excess of $16 million for a putative class. Prior to the lawsuit, Defendants requested specificity regarding Plaintiffs' damages in a letter dated November 30, 2016. *See* letter to John Driscoll from Lewis Sutherland, dated November 30, 2016, attached as Exhibit B (requesting information regarding the location, cost and cause of Plaintiffs' alleged individual damages).

Regardless, Plaintiffs failed to respond, electing instead to file this lawsuit.

Plaintiffs have thus asserted an unpresented claim for damages under OPA—a claim that is not ripe for adjudication in "an action in court." *See* 33 U.S.C. § 2713; *Boca Ciega Hotel, Inc.*, 51 F.3d at 240. Accordingly, Plaintiffs' OPA claim should be dismissed, either under Rule 12(b)(1) or Rule 12(b)(6).

### D.  Plaintiffs Fail to State How the Spill Caused Recoverable Damages under OPA.

Because OPA does not create a cause of action for the stigma or economic losses alleged by Plaintiffs, their OPA claims must be dismissed. To collect damages under OPA, a plaintiff's loss must "result from" "a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . ." 33 U.S.C § 2702(a). When a plaintiff seeks to recover for economic loss, as Plaintiffs do here, their damages must be "due to the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E). Read together, "Plaintiffs must establish that their economic losses were 'due to' the injury, destruction, or loss of property or natural resources that 'result[ed] from' the discharge or threatened discharge of oil." *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 168 F. Supp. 3d 908, 916 (E.D. La. 2016). Though the Seventh Circuit has not considered the issue, both the Fourth and Fifth Circuits have agreed that OPA "was not designed to cover economic losses that are derivative of an oil spill." *Id*. at 6 (citing *Gatlin Oil Co., Inc. v. U.S.*, 169 F.3d 207, 211 (4th Cir. 1999); *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371, 383 (5th Cir. 2006)).

As noted above, Plaintiffs' Complaint does not identify any specific physical damage to any property (their own or someone else's), nor does it specify any aspect of Defendants' clean-up efforts that caused harm. Rather, as noted above, the only specifically identified injury is "stigma" adversely impacting property value based on how the "real estate market perceive[s]

risk." Doc. 1 at ¶¶ 48-50. OPA does not create a cause of action for such nebulous losses. Instead, the statute requires a nexus between economic loss and actual damage to property, not "market perception" of harm. *See* 33 U.S.C. § 2702(b)(2)(E) (providing for damages for lost profits "due to the injury, destruction, or loss of real property, personal property, or natural resources"); *see also, Adams v. Star Enter.*, 51 F.3d 417, 425 (4th Cir. 1995) (rejecting claim under Virginia oil spill statute, which is analogous to OPA, for "stigma" damage unconnected to some physical injury caused by the oil spill).

In *Blue Water Boating, Inc. v. Plains All American Pipeline, L.P.*, 2017 WL 405425 (C.D. Calif. 2017), the court considered a tourist boating company's OPA claims for lost profits allegedly arising from an oil spill off the California coast.[7] The court concluded that this alleged damage was "a step too far removed from OPA['s] . . . requirement that the [economic loss] be 'due to' the destruction of natural resources." *Id.* at *3. The court explained that "[i]f Plaintiff is to recover under OPA . . . it must link its harm to the property damage caused by the oil spill." *Id.* The court then held:

> Plaintiff's broad allegations that the oil spill affected swaths of the Santa Barbara coastline are not specific enough to demonstrate how the oil affected [Plaintiff's] property or the coastal waters immediately surrounding [Plaintiff's] property, and how that harm, in turn, affected Plaintiff's business. To put Defendants on notice of the scope of their liability and to satisfy the pleading requirements of Rule 8, [Plaintiff] must clarify how the oil spill damaged its property—or the coastline immediately surrounding its property—and to what extent its losses stemmed from such damage.

*Id.* Plaintiffs' OPA claims here of economic loss based on alleged changes in "market perception" suffer from the same deficiency and should accordingly be dismissed.[8]

---

[7] "Plaintiff seeks to recover for the business it lost when would-be tourists learned of the harm to the coastline and decided to cancel or defer their trips. . ." *Id.* at *3.

[8] Plaintiffs also allege adverse impacts to groundwater. Doc. 1 at ¶ 46. Regardless, OPA does not provide a basis to assert claims for damages to groundwater. *See Chevron U.S.A. v. Apex Oil Co.*, 113 F.Supp. 3d 807, 817 (D. Md. 2015).

### E.    Plaintiffs' Claims are Insufficiently Pleaded under *Twombly* and *Iqbal*.

Plaintiffs' descriptions of their claims under trespass, negligence, and nuisance (Counts II, III, IV, V, and VI) and for violation of OPA (Count I) consist largely of generic, conclusory allegations. Plaintiffs have made no attempt to plead any facts that show that these claims are plausible—that is, Plaintiffs have not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Instead, the Complaint contains bare allegations that merely conclude liability is present without any factual development to support that ultimate conclusion. For example, more than a year and a half after the spill and a year after resolution of the incident cleanup by the Illinois Environmental Protection Agency,[9] Plaintiffs insist that the spill will continue to have a "detrimental effect on the surrounding environment, wildlife, and properties." Doc. 1 at ¶ 44. Yet, Plaintiffs fail to provide any meaningful description of these allegedly continuing "detrimental effects"—just the generic, conclusory allegation that these effects exist.

Similarly, Plaintiffs allege "[i]n regards to soil and groundwater, the oil spill has caused and will cause material impact to the watershed including drinking water sources." Doc. 1 at ¶ 46. But, there is no description of where such "material impacts" occurred or even what those impacts might be. There are no case-specific facts alleged to support Plaintiffs' claim that the spill adversely impacted any drinking water. These generalized allegations are completely untethered from the actual events that are at issue in the lawsuit. The same deficiencies exist with Plaintiffs' generalized statements about soil and sediment impacts. *Id*. at ¶¶ 46-47. Plaintiffs' Complaint reads like a generic list taken from a poorly researched magazine article on the possible impacts of an oil spill. Importantly, there is absolutely nothing that connects this generic

---

[9] A copy of the Illinois Environmental Protection Agency letter resolving issues associated with the spill and indicating a return to compliance is attached as Exhibit C. The Court may take judicial notice of this government document under FRE201.

list to site-specific facts associated with (i) the release of oil from Pocahontas Station in July 2015, (ii) the properties owned by Plaintiffs, (iii) the impacts of the oil on the adjacent drainage ditch and portions of Silver Creek, or (iv) Defendants' subsequent sampling and cleanup work under the supervision of the Illinois Environmental Protection Agency.

The Plaintiffs' Complaint is equally deficient in providing alleged facts to support essential elements of the relevant causes of action, as illustrated below.

> ### 1. Plaintiffs have failed to allege possessory interests sufficient to support a trespass claim.

"A trespass is an invasion in the exclusive possession and physical condition of land." *City of Evanston v. Texaco, Inc.*, 19 F.Supp.3d 817, 826 (N.D. Ill. 2014) (citing *Lyons v. State Farm Fire & Cas. Co*., 349 Ill.App.3d 404, 411, 811 N.E.2d 718, 725 (5th Dist., 2004)). Importantly, trespass requires an invasion "by entry upon" land where the plaintiff enjoys "exclusive possession." *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill.App.3d 669, 689-90, 941 N.E.2d 347, 367 (2nd Dist., 2010). In *Bos*, the court rejected plaintiffs' trespass claims where the plaintiff failed to show an actual invasion of plaintiffs' property by the alleged pollution from defendants' animal feeding operation. *Id.*

Plaintiffs' Complaint here contains one conclusory allegation regarding impacts to their land. Paragraph 80 states in its entirety: "Plaintiffs and Class members' property were affected by the oil contamination when polluting matter entered upon the surface of their land." Doc. 1 at ¶ 16. This conclusory statement does not meet the pleadings standards of *Twombly* and *Iqbal*. Most obviously, as noted above, Plaintiffs have not even identified the properties over which the named Plaintiffs have exclusive possession that were invaded by the "oil contamination."

Instead, the bulk of Plaintiffs' allegations are focused on the waters of Silver Creek and Silver Lake. In the Complaint, Plaintiffs make allegations concerning the alleged contamination

of "surrounding waterways in and near Highland, Illinois, including into the creek adjacent to David Medlock's property." Doc. 1 at ¶ 16. But Plaintiffs cannot base their trespass claims on alleged invasions to surface water. Under Illinois law, a riparian owner along a body of surface water has only a usufructuary interest[10] (as distinct from a fee simple interest) in the water. *See Druley v. Adam*, 102 Ill. 177, 193 (1882); *Smith v. City of Woodstock*, 17 Ill.App.3d 948, 952, 309 N.E.2d 45, 48 (2d Dist., 1974). Illinois courts have held that this usufructuary interest in use of surface water does not constitute an exclusive ownership interest on which to base a trespass claim because surface waters ultimately belong to the State of Illinois, not an individual property owner. *See Clark v. Lindsey Light & Chem. Co*., 405 Ill. 139, 142, 89 N.E.2d 900, 902 (1950) ("[T]here can be no property merely in the water of a running natural stream. . . [T]he waters of a natural stream or other body, owing to the peculiar character thereof, are not susceptible of absolute ownership as specific, tangible property. . .") (internal quotations and citations omitted).

Plaintiffs have not identified the allegedly impacted real properties or the nature of property invasions upon which they base their claims. Instead, they have put misplaced focus on alleged "trespass" to surface waters over which they do not have exclusive possession. Plaintiffs' trespass allegations do not meet the pleadings standards of *Twombly* and *Iqbal* because they do not allege facts sufficient to identify a real property over which Plaintiffs have a possessory interest that was subject to an unlawful invasion caused by the oil spill.

### 2.    Plaintiffs' negligence per se claims are inadequately pleaded.

In support of their negligence per se claim, Plaintiffs allege that "Defendants' actions and/or inactions are violations of the Oil Pollution Act of 1990," and that their harm "resulted from the occurrence of the nature that the laws listed above were designed to prevent," and that

---

[10] A usufructuary interest is the right to use, enjoy, or consume a thing without the property right of ownership over that thing. See Black's Law Dictionary 1778 (10th ed.); *see also Clark v. Lindsey Light & Chemical Co*., 405 Ill. 139, 142, 89 N.E.2d 900, 902 (1950).

Plaintiffs "are member[s] of the class of persons for whose protection those laws were adopted." Doc. 1 at ¶¶95-98. Plaintiffs cite to OPA as the sole statutory basis for their negligence per se claim. Because Plaintiffs' OPA claims should be dismissed (as described above), OPA cannot provide a foundation for Plaintiffs to plead a viable negligence per se cause of action.

Moreover, even standing alone, Plaintiffs' negligence per se claim does not meet the pleading standards of *Twombly* and *Iqbal*. The entire count is nothing but conclusory statements. Specifically, the count does not identify conduct by Defendants or statutory provisions in OPA that Plaintiffs contend support a claim for negligence per se. Moreover, Plaintiffs fail to identify any fact that makes them part of a "class of persons" that OPA is designed to protect. There are no facts alleged in connection with Plaintiffs' negligence per se claim that would allow "the court to draw the reasonable inference that the defendant is liable." *Iqbal*, at 678.  Plaintiffs' negligence per se allegations do not meet the pleadings standards of *Twombly* and *Iqbal*.

### 3.      Plaintiffs have not pled an invasion of the use and enjoyment of a real property interest sufficient to support a nuisance claim.

Under Illinois law, a private nuisance is an invasion of another's interest in the use and enjoyment of his or her land. *In re Chicago Flood Litig*., 176 Ill.2d 179, 223 (1997). The invasion must be substantial, unreasonable, and either negligent or intentional. *Id*. Similarly, a public nuisance is a substantial and unreasonable interference with a public right. *City of Chicago v. Am. Cyanamid Co.*, 355 Ill.App.3d 209, 214, 823 N.E.2d 126, 131 (1st Dist., 2005). Plaintiffs' description of the alleged "unreasonable interference" is entirely conclusory.  *See* Doc. 1 at ¶ 101 ("Defendants have created a condition that is harmful to health and interferes with the comfortable enjoyment of life and property . . ."). There is (i) no identification of the allegedly impacted property, (ii) no description of any actual loss of use, (iii) no indication whether the loss of use is temporary, permanent, or the relevant time period, and (iv) no description of the

physical conditions arising from the oil spill that led to the alleged loss of use. Plaintiffs'
nuisance allegations do not meet the pleadings standards of *Twombly* and *Iqbal*.

### 4.    Plaintiffs' class allegations are conclusory and insufficient.

The Seventh Circuit has held that the plaintiff is "obligated in its complaint to *allege facts*
bringing the action within the appropriate requirements of the [class action] Rule." *Cook County
College Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972)(emphasis added).
District courts have interpreted this requirement as justifying dismissal of insufficiently pleaded
class allegations. *See e.g., Barrus v. Dick's Sporting Goods, Inc.*, 732 F.Supp.2d 243, 249
(W.D.N.Y. 2010)(". . . plaintiff must plead more than a simple reiteration of [the class
certification] requirements in conclusory allegations. Instead, the plaintiff should allege facts
demonstrating that all of the requirements for bringing a class action are fulfilled" (*quoting*
MOORE' FEDERAL PRACTICE § 23.60[2]); *Wright v. Mishawaka Housing Authority*, 2016 WL
7013875, *6 (N.D. Ind. Dec. 1, 2016). Plaintiffs' class allegations contain essentially no case
specific facts. *See* Doc. 1 at ¶¶ 53-63. Instead, with the exception of a conclusory list of
"common issues" under Plaintiffs' discussion of the commonality requirement (23(a)(2)), these
allegations are a cut and paste of the bare rule requirements without any reference to how the
facts in this case fit those requirements. These kinds of conclusory allegations are insufficient.

Moreover, the shortcomings in Plaintiffs' class allegations are particularly problematic
because the Seventh Circuit recently rejected class certification in a similar pollution property
damage case:

> . . . there is no common issue, only individual issues that will vary from
> homeowner to homeowner: is there benzene in the groundwater beneath his home
> at a level of concentration that if the groundwater were drunk would endanger
> health (and is there any possibility it would enter the water supply); what is the
> source of the benzene in the groundwater beneath a given home (that is, who is
> the polluter who caused the groundwater to become polluted); could the presence

of the benzene in that concentration cause any other form of harm; has the presence of the benzene reduced the value of his property; if so, how great has the reduction been. *It is difficult to see how these issues can be managed in the class action format.*

*Parko v. Shell Oil Co.*, 739 F.3d 1083, 1087 (7th Cir. 2014)(emphasis added). Plaintiffs provide no factual support to distinguish the characteristics that led to denial of class certification in *Parko*. The fact is that environmental tort cases are generally not amenable to class certification because they cannot meet the Rule 23(a) requirements of commonality and typicality, or the Rule 23(b) requirements of predominance and superiority (23(b)(3)) or cohesiveness (23(b)(2)). At a minimum, Plaintiffs here should be required to plead sufficient "facts demonstrating that all of the requirements for bringing a class action are fulfilled" with particular attention to explaining why their case is different from *Parko* – something that they have wholly failed to do in their Complaint.

In summary, Plaintiffs' Complaint lacks the key facts essential to the elements of their causes of action. Absent allegations of these facts, Plaintiffs have not pleaded plausible causes of action, but only "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alterations omitted)). Moreover, Plaintiffs' failure to plead facts—even as to the claims asserted by the three proposed class representatives—deprives Plains of its right to fair notice as to the nature of the claims against it and the injuries allegedly suffered. *See* Fed. R. Civ. P. 8(a); *Radunz v. Muhlhausen*, 2009 WL 1604709, at *1 (W.D. Wis. June 5, 2009) (dismissing complaint under FRCP 8 because it failed to provide defendants with notice of plaintiff's claims against them). Plaintiffs' claims should be dismissed.

### F.   Plaintiffs Fail to Plead Facts Sufficient to Support an Exemplary/Punitive Damages Award.

Plaintiffs request "exemplary or punitive damages as allowable by law for the oppression, fraud, and malice alleged [elsewhere in the Complaint]." Doc. 1 at  p. 23. But, Plaintiffs have

failed to allege any facts regarding Defendants' conduct that would plausibly support an exemplary/punitive damages award. Instead, the Complaint is replete with only conclusory characterizations regarding Defendants' alleged conduct. *See, e.g., id.* at ¶ 86 ("Defendants' wanton or reckless conduct, as described herein, entitles Plaintiffs and Class members to punitive damages."); *id.* at ¶ 99 (same); *id.* at ¶ 109 (same). These conclusory statements, unsupported by factual allegations, are insufficient to plead a claim for punitive damages. *See Stigleman v. Wal-Mart Stores, Inc.*, 2014 WL 4947500, at \*6 (C.D. Ill. Sept. 30, 2014) ("Merely pleading in conclusory fashion that the defendant's actions were willful and wanton is insufficient; rather, factual allegations must show the defendant's intent or their indifference to or conscious disregard for the plaintiff's safety."); *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013). Plaintiffs have not alleged conduct by Defendants that rises to the level of outrageousness, oppression, or actual malice to justify a punitive damages award.

Moreover, to the extent that Plaintiffs' claim for punitive damages is based on fraud (as alleged in the Complaint), Plaintiffs' allegations fail to satisfy the heightened pleading standard imposed by Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9(b), a plaintiff must plead the "circumstances constituting fraud" with particularity. Fed. R. Civ. P. 9(b). In the Seventh Circuit, proper pleading under Rule 9(b) requires specific allegations concerning "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Machowicz v. Kaspersky Lab, Inc.*, 2014 WL 4683258, at \*3 (N.D. Ill. Sept. 19, 2014) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)) (internal quotations omitted). Put differently, circuit precedent requires that the plaintiff allege "the who, what, when, where, and how" supporting fraud allegations. *Wigod v. Wells Fargo Bank, N.A.*,

673 F.3d 547, 569 (7th Cir. 2012) (internal quotations omitted). And courts in the Seventh Circuit have specifically applied the Rule 9(b) pleading requirements to fraud-based claims for punitive damages. *Stuhlmacher v. Home Depot*, 2011 WL 1792853, at *6 (N.D. Ind. May 11, 2011).

Plaintiffs have demonstrably failed to satisfy this requirement. The request for relief section of the Complaint contains only a conclusory allegation that punitive damages are allowable "for the . . . fraud . . . alleged above." Doc. 1 at 23. But, Plaintiffs have not pleaded a cause of action for fraud.  The Complaint does not allege any facts that someone, on behalf of Defendants, made a misrepresentation constituting fraud, when and where that allegedly fraudulent misrepresentation occurred, what the content of that misrepresentation was, or how that misrepresentation was communicated to Plaintiffs. *Machowicz*, 2014 WL 4683258, at *3. Plaintiffs have not sufficiently pleaded allegations that would support a punitive damages award.

## III.    CONCLUSION

For these reasons, Defendants pray that this Court dismiss Plaintiffs' Complaint in its entirety. Defendants also pray for such other relief as to which they are entitled.

Rynearson, Suess, Schnurbusch & Champion, LLC, Attorneys for Defendants

BY:  s/Alphonse J. Pranaitis
        ALPHONSE J. PRANAITIS, #02246619
        apranaitis@rssclaw.com

Business Address:
107 Southpointe Drive
Edwardsville, IL 652025
Telephone:  (618)  659-0588
Fax:  (618)  465-3744

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2017, I electronically filed **Defendants' Combined Motion to Dismiss Plaintiffs' Class Action Complaint and Brief in Support** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following ECF registrants:

John J. Driscoll
The Driscoll Firm, P.C.
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Email: john@thedriscollfirm.com
**Attorney for Plaintiff**

Christopher J. Quinn
The Driscoll Firm, P.C.
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
Email: chris@thedriscollfirm.com
**Attorney for Plaintiff**

*s/Alphonse J. Pranaitis*
Alphonse J. Pranaitis #2246619
Rynearson, Suess, Schnurbusch
& Champion, LLC
107 Southpointe Drive
Edwardsville, IL 62025
Telephone: (618) 659-0588
Facsimile: (618) 465-3744
apranaitis@rssclaw.com
**Attorneys for Defendants**