IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN NODINE, CHERYL MORR, and DAVID MEDLOCK, On Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., PLAINS PIPELINE, L.P., and JOHN DOES,<br><br>    Defendants. | Case No. 17-CV-163-SMY-DGW |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Kevin Nodine[1], Cheryl Morr, and David Medlock filed the instant putative class action lawsuit against Defendants Plains All American Pipeline, L.P. and Plains Pipeline, L.P., arising from an oil spill that occurred on July 10, 2015 (Doc. 1). Now before the Court is Defendants' combined motion seeking dismissal pursuant to *F.R.C.P.* 12(b)(1) and 12(b)(6) (Doc. 10). For the following reasons, Defendants' Motion will be **DENIED**.

### Background

Plaintiffs' class action Complaint asserts claims under the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701, *et seq.* as well as Illinois state law. Plaintiffs claim that during the morning of July 10, 2015, a pipeline fitting ruptured or otherwise failed at Defendants' Pocahontas Pump Station. Plaintiffs allege the pipeline was equipped with a defective leak detection system that failed to trigger any alarms when the crude oil spilled into the containment dike (a backup storage

---

[1] Plaintiff Kevin Nodine and the defendants filed a Stipulation of Dismissal Without Prejudice on April 12, 2018 (Doc. 59). Accordingly, Nodine's claims will be DISMISSED without prejudice.

container), and that Defendants knew that erosion had caused leakage between a drain pipe and a catchment berm of the containment dike eight days before the oil spill. Plaintiffs further allege that the oil spill caused 4,000 gallons of crude oil to contaminate the surrounding area and caused "real and lasting effects" on the environment and Highland residents' properties, including a creek adjacent to Plaintiff David Medlock's property and a lake from which residents of Highland and the surrounding communities of Grantfork, Pierron, and St. Jacob derive their drinking water.

Defendants argue that Plaintiffs' Complaint is subject to dismissal on the following grounds: (1) Plaintiffs have not satisfied the OPA's pre-litigation claims presentment requirement; (2) the economic loss doctrine bars recovery because the Complaint does not identify physical injuries to Plaintiffs' properties; (3) Plaintiffs have not sufficiently pleaded OPA or state law claims; and (4) Plaintiffs' class action allegations are conclusory and inadequate.

## Legal Standards

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), the Court must accept all well-pleaded factual allegations as true, draw reasonable inferences in the plaintiff's favor, and dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Shockley v. Jones,* 823 F.2d 1068, 1070 n. 1 (7th Cir. 1987).

To survive a motion to dismiss under Rule 12(b)(6), the Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Detailed facts are unnecessary, but the Complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests. *Olson v. Champaign Cnty.,* 784 F.3d 1093, 1098 (7th Cir. 2015) (citing *Erickson v. Pardus,* 551 U.S. 89, 93, (2007) (per curiam), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

A plaintiff is not expected to prove her case in the Complaint in order to survive dismissal under Rule 12(b)(6), but she must state a claim for relief that is plausible on its face. *Id.* at 404. What is required is enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations. *Olson,* 784 F.3d at 1099. As is true under Rule 12(b)(1), when reviewing a motion under Rule 12(b)(6), the Court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor. *Iqbal*, 556 U.S. at 662, 663.

## Discussion

### Rule 12(b)(1) – Subject Matter Jurisdiction

Defendants contend that Plaintiffs failed to satisfy the mandatory presentment clause of the Oil Pollution Act ("OPA"), and that therefore, this Court lacks subject matter jurisdiction over Plaintiffs' claim brought under the Act. Specifically, Defendants argue that Plaintiffs' October 18, 2016 demand letter "lacks the specificity necessary to satisfy presentment as it contains no 'sum certain' of damages, no description of damages Plaintiffs are personally claiming, and no basis to suggest that members of a putative class have satisfied presentment." (Doc. 10, p. 10).

The OPA requires that "all claims for removal costs or damages shall be presented first to the responsible party." 33 U.S.C. § 2713(a). "Claim" is defined as a "request, made in writing for a sum certain, for compensation for damages for removal costs resulting from an accident." 33 U.S.C. § 2701(3). Damages recoverable under the Act include damages for real property damage, loss of subsistence use of natural resources, loss of revenue, loss of profits, and loss of public services. 33 U.S.C. § 2701(5); *see also* 33 U.S.C. § 2702(b)(2). The OPA does not define the term, "sum certain."

Plaintiff's October 18, 2016 demand letter included the following with respect to damages:

For the above reasons, my clients and the potential putative class of Highland residents have been significantly damaged by the release. These damages can be quantified as follows:

- Environmental and Socioeconomic Damages:

…the nature and extent of the damages caused by the oil spill are extensive and broad-based. Quantification of the socioeconomic and environmental damages caused by the loss of 4,200 U.S. gallons of crude oil to the environment is a function of a number of factors such as the following: amount of oil released, the type of oil, the type and effectiveness of the cleanup response, the environmental media affected such as soils and surface water, the socioeconomic and cultural value/ of the area affected by the spill, the relative freshwater vulnerability, the relative habitat and wildlife sensitivity, and the nature of the area impacted by the spill such as rural, agricultural or urban, for example.

An accepted approach to estimating the costs of an oil spill, including cleanup and the socioeconomic and environmental damages was developed by the United States Environmental Protection Agency (U.S. EPA) in 2004 and can be refened to as BOSCEM (Basic Oil Spill Cost Estimation Model). The U.S. EPA BOSCEM is a model developed to address the above-noted parameters in estimating oil spill costs. Employing the model utilizing the spill-specific input parameters associated with this spill, the socioeconomic and the environmental damages total $8,069,145.

- Diminished Property Value:

In addition to the above damages, there is very real market resistance to properties in the impacted area. The scale of these damages can be calculated as described below.

There are an estimated 380 residential parcels and 120 agricultural parcels in the impacted area, some bordering an impacted waterway and others in close proximity. As described above, all these parcels are subject to market resistance resulting in diminished property values. Based on assessed values and published sources, such as the 2016 Illinois Farmland Values & Lease Trends pamphlet, the aggregate market value of all 500 parcels in the impacted area, without considering damages, is estimated at $112,700,000 (i.e., Residential property values totaling $64,250,000 + agricultural property values totaling $48,450,000).

The estimated damages to these property values can be calculated by subtracting a certain percentage based on methods discussed in relevant publications. These publications, by applying a variety of methods accepted in the appraisal industry, found that residential properties in or near an area affected by an oil spill experienced a reduction in property values in excess of 10%. Since market resistance (stigma) is often slightly more pronounced in residential than agricultural properties, a reduction of 5% can conservatively be applied to agricultural properties. Here, the result would be $6,425,000 in damages to residential property values (i.e., 10% of $64,250,000) and $2,422,500 in damages to agricultural

> property values (i.e., 5% of $48,450,000) for a total decrease in property value of $8,847,500.
>
> For all of the above reasons, the aggregate damages in this matter are $16,916,645 ($8,069,145 in Socioeconomic and Environmental Damages+ $8,847,500 in Damage to Property Values). At this time, I am authorized to settle my clients' claims and would recommend settlement of the class claims for that amount. This offer represents my minimum settlement authority and recommendation as we believe it to be a conservative calculation of damages. If I do not hear from you within ninety (90) days, this offer will be revoked and we will proceed with filing this matter in court.

In their demand letter, Plaintiffs detailed how the oil spill affected land use, property values, surface water and sediments, and soil and groundwater in the Highland community. While Defendants requested more specificity regarding Plaintiffs' claimed damages in subsequent letters, the OPA merely requires claimants to "present all claims and damages" to the responsible party; the statute does not require claimants to itemize damages individually.

The OPA does not define the term "sum certain." However, the Seventh Circuit has addressed what is needed to satisfy the requirements for a "sum certain" in the context of the Federal Tort Claims Act. In *Khan v. U.S.*, 808 F.3d 1169, 1172-73 (7th Cir. 2015), the Court noted, "[a]ll that must be specified…is 'facts plus and demand for money;' if those two things are specified, 'the claim encompasses any cause of action fairly implicit in the facts.'" *Id*. at 1172-73 (quoting *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996)). "But as 'facts plus a demand for money' must be specified, failure to ask for any damages – any money – is fatal." *Id*. at 1173 (quoting *Smoke Shop, LLC v. United States*, 761 F.3d 779, 787-88 (7th Cir. 2014)). This Court finds the Seventh Circuit's ruling in *Khan* instructive, and further finds that Plaintiffs' demand letter requested damages in a sum certain.

Defendants also argue that Plaintiffs were required to satisfy the presentment clause for each individual member of the putative class. There are an estimated 380 residential parcels and 120 agricultural parcels in the impacted area, and Plaintiffs allege that Defendants' oil spill has

caused widespread damages to Highland residents' properties and surroundings. The Court notes that under similar circumstances, Judge Carl J. Barbier of the U.S. District Court for the Eastern District of Louisiana denied Defendants' Rule 12(b)(1) motion to dismiss and permitted OPA claims to proceed in a multidistrict litigation against the parties responsible for the 2010 Deepwater Horizon oil spill, despite the fact that many plaintiffs may not have presented individual claims. *See In re Oil Spill by the Oil Rig Deepwater Horizon,* 808 F. Supp.2d 943, 964-65. In denying the defendants' motion to dismiss, Judge Barbier reasoned that strictly construing the OPA's presentment requirement would have required the Court to undertake the "impractical, time-consuming, and disruptive" task of reviewing over 100,000 individual claims. Id. at 965. Judge Barbier's reasoning is sound, and this Court also declines Defendants' invitation to place such an unreasonable and impractical burden on Plaintiffs at this juncture. Plaintiffs' demand letter provided Defendants with sufficient information to determine whether to settle or to proceed with litigation, which is the intent of the OPA presentment clause.

Because Plaintiffs' satisfied the presentment clause, this Court has subject matter jurisdiction over their claims under the OPA. Therefore, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied.

### Rule 12(b)(6) – Failure to State a Claim

#### *Recoverable Damages Under the OPA*

Defendants also assert that Plaintiffs have stated a viable claim under the OPA because they have not sufficiently pleaded that they sustained an actual injury to their property or loss. Conversely, Plaintiffs maintain that allegations give the defendants fair notice of the nature of the claim asserted under the OPA and state a claim for relief that is plausible on its face as required by *Iqbal* and *Twombly*.

Plaintiffs make the following allegations in the Complaint: their "property was affected by the oil contamination when polluting matter entered upon the surface of their land" (Compl. ¶ 80); the ruptured pipeline caused "well over 4,000 gallons of crude oil to spill into the surrounding waterways in and near Highland, Illinois, including into the creek adjacent to David Medlock's property, over which he has exclusive possession . . . ." (Compl. ¶ 16); the release of thousands of gallons of crude oil into Silver Lake caused harm to soil and groundwater, surface water and sediments, land use, and property values (Compl. ¶ 44); the oil spill created and will create uncertainty and stigma as to the safety of occupying Plaintiffs' properties and has reduced and will reduce the properties' market value (Compl. ¶¶ 48-49); there are an estimated 380 residential parcels and 120 agricultural parcels in the impacted area, which are subject to market resistance resulting in diminished property values (Compl. ¶ 50); and the socioeconomic and environment damages and damages to affected properties are in the millions of dollars (Compl. ¶ 52). These specific allegations belie Defendants' argument that Plaintiffs are merely seeking damages for stigma and nebulous losses. When read as a whole, Plaintiffs' Complaint states a viable claim for damages under the OPA. Thus, Defendants' motion to dismiss this claim for failure to sufficiently plead actual injuries is denied.

### *Class Allegations*

Defendants correctly note that a plaintiff in a putative class action is "obligated in [his or her] [C]omplaint to allege facts bringing the action within the appropriate requirements of the [class action] Rule." *Cook County College Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972). That said, while Defendants assert that Plaintiffs' class allegations are "conclusory and insufficient," the arguments raised in support or their motion are essentially arguments against class certification. When deciding a motion to dismiss, the Court must construe the allegations in the plaintiff's favor. By contrast, when deciding a motion for class certification,

the Court is required to make inquiry into the existence of facts sufficient to support certification. *Burton v. Hodgson*, 16-cv-1081-MJR-RJD, 2017 WL 1282882, at * 4 (S.D. Ill. April 6, 2017). The Court declines to apply the heightened class certification standard at the pleading stage. Plaintiffs are only required to set forth sufficient allegations to meet the minimal pleading standard. Here, Plaintiffs' class allegations are sufficient to bring this action within the requirements of Rule 23.

### *State Law Claims*

As an initial matter, Defendants assert that Plaintiffs' state law claims are all insufficiently pleaded under *Iqbal* and *Twombly*. Specifically, they assert "Plaintiffs' descriptions of their claims under trespass, negligence, and nuisance (Counts II, III, IV, V, and VI)…consist largely of generic, conclusory allegations. Plaintiffs have made no attempt to plead any facts that show that these claims are plausible—that is, Plaintiffs have not pleaded 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Iqbal*, 556 U.S. at 678. Instead, the Complaint contains bare allegations that merely conclude liability is present without any factual development to support that ultimate conclusion." (Doc. 10, p.13). The Court disagrees. *F.R.C.P.* 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. See *Twombly*, 550 U.S. at 555. Plaintiffs' Complaint satisfies these requirements as to the asserted state law claims.

Next, Defendants argue that the economic loss rule, commonly referred to as the *Moorman* doctrine, bars recovery for Plaintiffs' state law tort claims. Under the *Moorman* doctrine, purely economic losses are not recoverable in tort. *See Moorman Mfg. Co. v. National Tank Co.,* 435 N.E.2d 443, 448 (Ill. 1982). Illinois courts recognize an exception to the doctrine where a plaintiff

sustains personal injury or property damages due to a sudden or dangerous occurrence. *See In re Chicago Flood Litig.,* 680 N.E.2d 265, 275 (Ill. 1997). A sudden and dangerous occurrence is defined as an occurrence that is "highly dangerous and presents the likelihood of personal injury or injury to other property." *Id.* (internal citation omitted). The Court has concluded that Plaintiffs sufficiently allege property damage resulting from the oil spill under Rule 8 and *Iqbal*/*Twombly* pleading standards. Accordingly, Defendants' motion to dismiss Plaintiffs' state law tort claims based on the *Moorman* doctrine is denied.

Under Illinois law, "the violation of a statute or ordinance designed for the protection of human life or property is prima facie evidence of negligence, and that the party injured thereby has a cause of action, provided he comes within the purview of the particular ordinance or statute, and the injury has a direct and proximate connection with the violation." *First Nat. Bank in DeKalb v. City of Aurora*, 373 N.E.2d 1326, 1330 (1978). In this case, Plaintiffs rest their negligence per se claim on Defendants' alleged violation of the OPA. In addition to arguing that Plaintiffs' negligence per se claim is subject to dismissal for pleading deficiencies (an argument this Court has rejected), Defendants argue that the claim should be dismissed because Plaintiffs' OPA claim fails. Because the Court has concluded that Plaintiffs' OPA claim survives at this juncture, Plaintiffs' negligence per se claim survives as well.

Finally, Defendants argue that Plaintiffs' Complaint fails to plead facts sufficient to support a punitive damages award. Plaintiffs allege that despite knowledge and forewarning, Defendants failed to take reasonable steps to prevent the failure that resulted in the contamination at issue, and that Defendants have failed to take reasonable steps to abate the contamination (Doc. 1 ¶114), and that "Defendants' actions and inactions caused, maintained, and/or permitted the contamination alleged in this action and by its negligence, intentional or otherwise, actionable acts, and/or

admissions." (Doc. 1 ¶111). Given the totality of the allegations, Plaintiff's Complaint states a plausible punitive damages claim.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 10) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

**DATED: September 27, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**
