IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHERYL MORR and<br>DAVID MEDLOCK, On Behalf of<br>Themselves and All Others Similarly<br>Situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>PLAINS ALL AMERICAN PIPELINE,<br>L.P., and PLAINS PIPELINE L.P.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>) Case No. 17-cv-163-SMY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

  Plaintiffs Cheryl Morr and David Medlock, individually and on behalf of all similarly situated persons, filed the instant putative class action against Defendants Plains All American Pipeline, L.P. and Plains Pipeline, L.P., ("Plains"). Plaintiffs assert claims under the Oil Pollution Act, 33 U.S.C. §§ 2701, *et seq*. and state law claims for negligence, nuisance, and trespass arising from an oil spill that occurred on July 10, 2015 (Doc. 1).

  Now pending before the Court is Plaintiffs' Motion for Class Certification (Doc. 75) which Defendants oppose (Doc. 81). For the following reasons, Plaintiffs' Motion for Class Certification is **DENIED**.

### **Background**

  This case arises from a July 10, 2015 spill of approximately 100 barrels of crude oil from a failed tubing fitting at Plains' Pocahontas Pump Station (Doc. 82-1, p. 6). The Pump Station is located approximately 2.6 miles west of Pocahontas, Illinois and 6 miles northeast of the residential areas of Highland, Illinois (Doc. 82-2, p. 17). Following the spill, approximately 56

barrels were recovered as a result of Plains' cleanup efforts (Doc. 82-21).  The spill response and cleanup were overseen by regulators including, the U.S. Environmental Protection Agency ("USEPA"), Illinois Environmental Protection Agency ("IEPA"), and the City of Highland (Doc. 82-1).

The Pump Station is surrounded by rural land (Doc. 82-2, at 1).  The pathway of the spill stayed confined in a ditch leading away from the Pump Station, a tributary into which the ditch fed, and Silver Creek.  *Id*. at p. 2.  The oil did not extend beyond the Pump Station property or the Silver Creek shoreline.  *Id*.  The Release physically touched approximately 19 residential properties along the banks of a creek that widened behind a dam to form Silver Lake further downstream.

More than 2,000 air monitoring readings were taken following the spill.  According to USEPA, no readings had elevated levels of contaminants from the spill (Doc. 82-22, p. 4).  In Fall 2015, 76 sediment locations were sampled covering the entire flow path, and none of those locations exceeded IEPA cleanup levels (Doc. 82-2, p.11).  Soil and sediment samples showed that there were only 3 sets of man-made structures within 1,000 feet of any location where crude oil-related concentrations exceeded IEPA default cleanup levels (Doc. 82-2, pp. 4-5; Doc. 82-8, pp. 120-121).

More than 130 surface water and drinking water samples were also collected and USEPA concluded that the "final results showed no detections of crude oil constituents" (Doc. 82-22, p. 4).  At no point during or after the spill was the City of Highland's drinking supply impacted (Docs. 82-2, at p.4; 82-22, at p. 4).  Within 26 days of the spill, USEPA noted that there were "no observed sheen[s]" on the creek or lake, indicating removal of residual oil within the watershed (Docs. 82-2, at p. 11; 82-22, at p. 4).

The communities of Highland, Pocahontas, and Grant Fork are more than 2.5 miles away from the locations that had elevated concentrations of crude oil constituents (Doc. 82-2, pp. 12-13). None of the residential properties in Pocahontas or Highland have any shoreline on the flow path, and the majority of properties in Grant Fork lack such a shoreline as well. *Id*. at Fig. 13. No property of any kind (whether residential, agricultural, or otherwise) exceeded IEPA cleanup levels following the cleanup. *Id.* at p. 2.

There are no beach, swimming, water-skiing, or other similar recreational water sports on Silver Lake (Doc. 82-6, p. 3). Anyone may boat or fish on the lake, regardless of where they live or whether they own property, but only after purchasing a boat permit from the City of Highland. *Id*. Neither of the named Plaintiffs has ever purchased such a permit (Docs. 82-18, pp. 97-98; 82-19, pp. 97-98). Immediately after the spill, the boat ramp and use of the lake for boating and fishing was closed for approximately 12 days to facilitate access by the response crews, but the shoreline park and other amenities remained unaffected (Doc. 82-9, pp. 91-92; pp. 82-23).

The City of Highland owns all the shoreline property surrounding Silver Lake (Doc. 82-3, pp. 2-3). There are 19 residential properties, including Plaintiffs' properties, connected to the portion of the spill pathway that includes the ditch running adjacent to the Pump Station, an unnamed tributary that receives flow from the ditch, and Little Silver Creek. *Id*. There is no evidence of physical injury to any property (Docs. 82-15, pp. 140-149; p. 193).

Plaintiffs' environmental expert, Gary Rand, testified that he does not have any evidence that the spill adversely affected the City of Highland's water supply or ambient air, or that crude oil or oil degradation products from the spill are currently present in Little Silver Creek or Silver Lake. *Id.* at pp. 25-28; pp. 154-160. Plains' ecological toxicologist, Dr. Keith Tolson, conducted a site assessment using USEPA protocols and found no adverse ecological impacts from the spill

(Doc. 82-1, at pp. 1-2). According to Tolson, properties without shoreline on the flow path could not have suffered any contamination because it is physically impossible for oil to flow uphill outside of the bed and banks of the creek. *Id*.

IEPA, Plaintiffs' experts, and Plains' experts all took soil samples and performed laboratory analyses to assess potential environmental impacts from the Release (Doc. 82-2, at pp. 2-3; Doc. 82-12, at pp. 2-4, pp. 10-11). In March 2018, sampling was conducted on the named Plaintiffs' properties which are located on a small inlet upstream from Silver Creek. Seven soil/sediment samples were collected from Plaintiff Morr's property – all in the vicinity of the shoreline (Doc. 82-2, at pp. 7-8, p. 14). Four samples were taken on Plaintiff Medlock's property. *Id*. at pp. 9, 14. All samples taken near Silver Creek detected only trace-level polycyclic aromatic hydrocarbons ("PAHs")[1] concentrations – far below any levels requiring cleanup under IEPA standards (Doc. 82-2, at p. 14). Two samples from Medlock's property, one taken from a location adjacent to Highway 160 and the other taken from a location adjacent to the shared asphalt driveway, revealed concentrations 10 times higher than the creek-side locations; however, even those concentrations were only slightly above the IEPA cleanup levels. *Id.* at pp. 8-9, p. 14. On April 15, 2016, IEPA closed its file on the spill, sent a closure letter to Plains, and concluded that Plains' response had "address[ed] the causation and remediation issues associated with this release (Doc. 82-20, at p. 1).

Plains implemented a claims process following the spill through press releases, a website, and a toll-free phone number (Docs. 82-10, at ¶ 6; 82-11, at ¶ 4; 82-26). The toll-free line was operated by Plains' third-party claims processing contractor, Worley Claims Services, LLC ("Worley") (Doc. 82-11, at ¶ 3). In total, Worley settled three claims on Plains' behalf totaling

---

[1] PAHs are a class of chemicals contained in crude oil (*see* Doc. 82-2, at pp. 6-7). PAHs occur universally in the environment from both natural and synthetic sources. *Id*.

$350, all for the reimbursement of an annual Silver Lake boat pass due to the temporary closure of Silver Lake after the spill (Doc. 82-11, at ¶ 6).

Worley referred calls about real property issues to Brad Ethridge, a Plains employee who reported to the Pocahontas area the day after the spill to identify and resolve claims from property owners potentially impacted by the spill (Doc. 82-10, at ¶¶ 3-5). The owners of 8 residential properties along the creek reached settlements with Plains for claims related to the spill. *Id*. at ¶ 9. Plains did not negotiate settlements with 11 of the residential property owners, including Plaintiffs. *Id*. at ¶ 11. No other property owners have filed actions against Plains or made additional claims against Plains through the claims process in the intervening 3 years following the spill since mid-2016 (Doc. 82-10, at ¶¶ 9-14).

## Discussion

Plaintiffs filed this putative class action lawsuit seeking to recover for the following claims: violation of the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq. ("OPA") (Count I); trespass (Count II); negligence (Count III); negligence *per se* (Count IV); public nuisance (Count V); and continuing public nuisance (Count VI). They move for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and seek to represent the following class:

> All owners or lessees of residential properties in the Pocahontas, Grant Fork, and Highland Illinois communities, from July 10, 2015 to present. Excluded from this proposed class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the judge(s) to whom this case is assigned, the judge's staff, and any member of the judge's family.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011)). To be certifiable, a class must first be "identifiable as a class," meaning

that the class definitions must be definite enough that the class can be ascertained. *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659–61 (7th Cir. 2015).

Assuming the class is ascertainable, the plaintiff must satisfy all four requirements of *F.R.C.P.* 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). If the prerequisites of Rule 23(a) are satisfied, the proposed class must fall within one of the three categories described in Rule 23(b): "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). A party seeking to certify a class may not merely rest on his or her pleadings. Rather, "[a] party seeking class certification must affirmatively demonstrate compliance with the Rule - that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). "[A]ctual, not presumed conformance with Rule 23(a) remains . . . indispensable." *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 160 (1982).

### Identifiable Class

To establish that a class is ascertainable, a plaintiff must offer a class definition that is (1) precise, (2) defined by objective criteria, and (3) not defined in terms of success on the merits. *Mullins,* 795 F.3d at 659–60. A class that is defined too vaguely fails to satisfy the "clear definition" component. *Id.* at 660. The definition must identify a particular group, harmed during a particular time frame, in a particular location, in a particular way. *Id.*

The class proposed by Plaintiffs consist of individuals who owned or leased "residential properties in the Pocahontas, Grant Fork, and Highland Illinois communities from July 10, 2015 to present." The proposed class definition does not identify a specific harm suffered during a particular time frame or in a particular way; class membership requires nothing more than living in the geographic area since July 2015. As such, the definition is overbroad – it fails to create class membership that is contingent on any objectively ascertainable factors. This is problematic because it may include individuals who lack standing to maintain the action on their own behalf. *See*, *Oshana*, 472 F.3d at 514 (affirming the district court's ruling that the proposed class was not sufficiently definite, and stating that the class "could include millions who were not deceived and thus have no grievance under the ICFA"); *see also Messner*, 669 F.3d at 824 ("If ... a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.").

The fact that a spill occurred is, by itself, not sufficient to justify including everyone who lives or owns property in the vicinity of the spill path in the class. Significantly, Plaintiffs' proposed class of 4,400 households is populated almost entirely by property owners without any shoreline along the pathway of the spill and who could not have suffered a legally recognized injury or harm and Plaintiffs' expert witnesses do not provide evidence of physical injury to any property. Because Plaintiffs have failed to identify a sufficiently definite class, certification of the proposed class is improper.[2]

---

[2] Although the Court could end its analysis based solely on this issue, it will examine whether the requirements of Rule 23(a) have been satisfied.

### Rule 23(a)

"All class actions, no matter what type, must meet the four explicit requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015). As discussed below, Plaintiffs' proposed class action satisfies the requirement for commonality, typicality, and adequacy of representation, but fails with respect to numerosity.

### *Commonality, Typicality, and Adequacy of Representation*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed.R.Civ.P 23(a)(2). A "common nucleus of operative fact" generally fulfills this requirement. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). This common nucleus is typically found "where the defendant has engaged in some standardized conduct toward the proposed class members." *Mejdreck v. Lockformer Co.,* No. 01 C 6107, 2002 WL 1838141, at *3 (N.D. Ill. Aug. 12, 2002), *aff'd sub nom. Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003).

Here, Plaintiffs seek to certify an Illinois class based on the OPA and state law trespass, negligence, and nuisance claims. They allege the spill caused significant environmental and property damage to members of the proposed class and contend that common issues include (1) the root cause(s) of the Release; (2) whether Plains acted negligently, recklessly, and/or maliciously with respect to inspection, repair or maintenance of the pipeline and pump station; and (3) the nature and scope of the resulting harm.

A single common question is sufficient to satisfy the Rule 23(a)(2) commonality requirement. *Wal–Mart,* 131 S.Ct. at 2556. And Plaintiffs identify questions of law and fact that ostensibly lend themselves to adjudication on a class wide basis. As such, the Court finds that Plaintiffs meet the requirements of Rule 23(a)(2).

For typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

Typicality is satisfied if the named representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Rosario,* 963 F.2d at 1018. In this way, typicality and adequacy inquiries often overlap. *See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999) (holding that if a plaintiff's claim is atypical, he is not likely to be an adequate representative).

Plaintiffs assert that that, as residential property owners in the class area, their claims are typical of all other class members because the same event – the Silver Lake oil spill – gives rise to every class member's claim. Plains disputes typicality, arguing that the named Plaintiffs own property with shoreline frontage and may have individualized claims against Plains based on the

impact the spill had on their properties. On the other hand, the vast majority of the class do not own shoreline frontage and could not have been affected by the spill.

The central event in the proposed class members' claims is the spill and the class members' factual and legal theories are based on alleged environmental and property damage from the spill. Plains is correct that significant factual variations exist between class members and there is no evidence that any oil extended beyond the Pump Station property or the Silver Creek shoreline. Further, none of the residential properties in Pocahontas or the City of Highland have any shoreline on the flow path. That said, factual inconsistencies between the class are not enough to defeat typicality. *Rosario,* 963 F.2d at 1018; *see also Schleicher v. Wendt,* 618 F.3d 679, 686 (7th Cir. 2010) ("Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win."). Accordingly, typicality is met.

As for adequacy, a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted).

In this case, Plaintiffs' counsel have vigorously prosecuted this action and are well-versed in class action practice. The Court has no reason to believe they are unqualified or that they will not fairly and adequately represent the interests of the class.

With respect to the named Plaintiffs, the adequacy requirement is satisfied if they have "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and "[do] not have interests antagonistic to those of the class." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010). A person whose claim is idiosyncratic or possibly

unique is an unsuitable class representative. *See Suchanek*, 764 F.3d at 758. While Plains argues that Plaintiffs' claims are idiosyncratic to the class because they have 2 of only 11 properties with shoreline frontage, the fact they may have stronger individual claims than the class does not render their interests antagonistic to the class. Adequacy is satisfied.

### *Numerosity*

Under Seventh Circuit law, "[t]he key numerosity inquiry ... is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 773 (7th Cir. 2021). "Answering that question requires evaluation of the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Id.* (internal quotations and citations omitted). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *Pruitt v. City of Chicago,* 472 F.3d 925, 926 (7th Cir. 2006).

Plaintiffs maintain the proposed class includes 4,400 properties based on an estimate of how many residential properties are in the communities of Highland, Pocahontas, and Grant Fork. However, given the overbroad class definition and the lack of evidence that the spill affected the proposed class area, Plaintiffs' numerosity argument fails. The evidence shows that only 11 residential properties are located along the spill pathway with unresolved claims and Plaintiffs provide no evidence that joinder is impracticable for the absent class member property owners.

### Rule 23(b)

Because Plaintiffs have failed to fully satisfy the requirements of Rule 23(a), the Court need not address whether under Rule 23(b)(3) common issues of law and fact predominate over individualized issue or whether a class action is superior to other vehicles available for adjudicating this controversy.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Doc. 75) is **DENIED**. Plaintiffs are to proceed as individuals.

**IT IS SO ORDERED.**

**DATED: October 5, 2021**

**STACI M. YANDLE**
**United States District Judge**